# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

|  |  |
|---|---|
| RACE HOLDINGS, LLC | Case No.: 3:20-cv-01450-HES-JBT |
| Plaintiff, | |
| v. | |
| SHAREDLABS, INC.,<br>RISEIT SOLUTIONS, INC. and<br>JASON M. CORY | Jury Trial Demanded |
| Defendants. | |

## AMENDED COMPLAINT

1. Race Holdings, LLC ("Race Holdings") was, and upon information and belief remains, the largest cash investor in SharedLabs, Inc. ("Shared Labs").  Race Holdings invested a total principal amount of $3,000,000.00 in Shared Labs.  Race Holdings negotiated and obtained a contractually guaranteed return of both its principal investment and a 35% per annum return on its principal investment.

2.  Shared Labs n/k/a RiseIT Solutions, Inc. ("RiseIT") posits that Race Holdings rights to be paid its principal and its 35% return on that principal are worth zero ($0.00) unless Shared Labs/Rise IT goes public, and if so, then their value is limited to some escrowed shares.  The position is patently incorrect.

3.  Jason M. Cory executed a Guaranty as CEO of Shared Labs, and individually, which demonstrates that Shared Labs:

a) "absolutely, unconditionally and irrevocably guarantees" Race Holdings "the payment of (i) an aggregate of $3,000,000; and (ii) such amounts equal to the Guaranteed Return";

b) is liable for its "**Absolute and Unconditional**" (emphasis in original) Guaranty above and beyond the escrowed shares; and

c) has "irrevocably waive[d] any defenses it may now or hereafter have in any way relating to … [a]ny lack of validity or enforceability of the [Guaranteed Return] or any agreement or instrument relating thereto."  Exhibit 1.

## PARTIES

4.   Plaintiff Race Holdings, LLC, is a Puerto Rico limited liability company.

5.   Defendant SharedLabs, Inc. is a Delaware corporation with its principal place of business in Jacksonville, Florida.  It has been served and appeared herein through counsel.

6.   In or about April, 2020 Defendant SharedLabs changed its name to RiseIT Solutions, Inc., also a Delaware corporation.  Defendant RiseIT Solutions, Inc. also has its principal place of business in Jacksonville, Florida at the same address as Shared Labs.  As the controlling contracts in this case were entered by Shared Labs before it changed its name to RiseIT, absent a specific need to refer to RiseIT, reference herein to "Shared Labs"

will constitute a reference to both of the corporate defendants before and after the name change.  It has been served and appeared herein through counsel.

7.     Defendant Jason M. Cory, is upon information and belief, a resident of the Middle District of Florida.  Jason Cory has been served and appeared herein through counsel.

## JURISDICTION

8.     This Court has subject matter jurisdiction because there is complete diversity between Plaintiff and Defendants. 28 U.S.C. § 1332(a)(1) and the amount in controversy exceeds $75,000 exclusive of costs and interest.

9.     This Court has personal jurisdiction over Defendants Shared Labs and RiseIT because they maintain their principal place of businesses and headquarters in Jacksonville, Florida, regularly conduct business in Florida, and have sufficient minimum contacts with Florida.  RiseIT listed one of its headquarters [sic] as 6 E. Bay St., 4th Floor, Jacksonville, Florida 32202, as recently as 11/15/2020 at www.riseits.com/contact-us/ and listed the same as its principal address with the Florida Department of State on or about 4/30/2020. Defendants Shared Labs and RiseIT intentionally availed itself of this jurisdiction by soliciting Race Holdings' investments in and from Florida.  Defendant RiseIT has a registered agent for service of process in Florida.

10.     Defendant Jason M. Cory was, and upon information and belief remains, a resident of the State of Florida.

## VENUE

11. Venue is proper in this District under 28 U.S.C. § 1391 because one or more Defendants reside in the District, a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and Defendants have caused harm in this District.

## FACTUAL ALLEGATIONS

12. In June, 2017, Race Holdings entered agreements with Shared Labs as an investor.

13. Race Holdings acquired 600,000 shares and a certain amount of warrants for $1,500,000.00 in principal.

14. Keith M. Jensen is the Managing Member of and owns 100% of the shares of Race Holdings, LLC.  On 7/1/2017, Mr. Jensen entered a letter agreement with Jason M. Cory of Glade Liquidity, LLC. (the "2017 Letter Agreement").  Exhibit 2.

15. The 2017 Letter Agreement stated in part: "Jensen and Glade shall establish an escrow account with [an attorney] where Glade shall deposit, and the Escrow Agent shall hold, 400,000 shares of Common Stock (the "Escrow Shares")."

16. The 2017 Letter Agreement stated that if Mr. Jensen's 600,000 shares were not worth $1,800,000.00 "on the one (1) year anniversary of the [date of issuance]" (a 20% annualized return from issuance) that "for every $2.50 that sum is worth less than $1,800,000, Jensen shall become the owner of one Escrow Share".

4

17.     Mr. Cory also entered a personal guaranty on 7/1/2017, "absolutely, unconditionally and irrevocably guarantee[ing] … the entire amount of $1,800,000" to Mr. Jensen "[i]n consideration of the substantial direct and indirect benefits derived by the Guarantor from the investment by [Race Holdings] of $1,500,000 for shares of common stock from Shared Labs, Inc."  Exhibit 3.

18.     Messrs. Cory and Jensen signed an Escrow Agreement to escrow "400,000 shares of common stock of [Shared Labs]" on 7/1/2017.  Exhibit 4.

19.     About six (6) months later Race Holdings invested a second $1,500,000.00 in Shared Labs making its total investment in Shared Labs $3,000,000.00.

20.     On 1/1/18 Race Holdings and Shared Labs entered a second letter agreement ("The 2018 Letter Agreement").  Exhibit 5.

21.     The 2018 Letter Agreement, in part, states:

The Company agrees that Jensen, or its designee, shall, on the one year anniversary of the initial public offering of Company's securities, become the owner of such amount of Escrowed Common Stock, in the manner contemplated under the Original Letter Agreement, so that Jensen is guaranteed a 35% annual return on his initial investment in the Company in the amount of $1.5 million, accruing from June 30, 2017 (the "First $1.5M"), and a 35% annual return on his investment of $1.5 million pursuant to the Offering, accruing from January 10, 2018 (the "Second $1.5M") (the "Guaranteed Return"). The Guaranteed Return shall be calculated based on the closing price per share of the Common Stock as of the first year anniversary of the Company's initial public, offering, less (i) the amount received by Jensen or his designee from the sale of the Company's Common Stock; (ii) the Current Market Value of his unsold shares of the Company's common stock; and (iii) the Black-Scholes valuation of the warrants issued to Jensen. If the difference is a number equal to or less than zero, Jensen shall not be entitled to receive any Escrowed Common Stock.

The Guaranteed Return shall increase by one (1) percent for each month after August 1, 2018 if the Company does not complete an initial public offering of its Common Stock by such date.

22.     On 1/18/2018, Shared Labs (not Glade Equity, LLC) through Mr. Cory entered an Amended and Restated Escrow Agreement with Mr. Jensen wherein "[t]he parties … agree to establish an escrow account with the Escrow Agent wh[ich] shall hold a certificate … representing 2,250,000 shares of common stock… [of Shared Labs]". Exhibit 6.

23.     On 1/20/2018, Mr. Cory as CEO of Shared Labs, and individually, signed a Guaranty in favor of Race Holdings.  Exhibit 1.  In part, that Guaranty states:

> The Guarantor absolutely, unconditionally and irrevocably guarantees, as p rimary obligor and not merely as surety, the payment of (i) an aggregate of $3,000,000; and (ii) such amounts equal to the Guaranteed Return set forth in the [2018] Letter Agreement (the **"Obligation"**). (emphasis in original)

24.     That "Obligation", as stated, is Shared Labs contractual agreement to two things: (i) pay Race Holdings its $3,000,000.00 principal investment; and (ii) to pay Race Holdings "such amounts equal to the Guaranteed Return set forth in the [2018] Letter Agreement".

25.     Shared Labs is liable for the Guaranteed Return set forth in the 2018 Letter Agreement above and beyond the escrowed 2,250,000 shares.  The Guaranty states:

> **Guaranty of Payment Absolute and Unconditional; Waivers.** This Guaranty is a guaranty of payment and is absolute. The Guarantor agrees that the Subscriber need not attempt to collect to realize upon any collateral to enforce the obligations hereunder, except that Subscriber must attempt to first collect the Guaranteed Return from the Company through Subscriber's receipt of a sufficient amount of Escrowed Common Stock (as defined in the Letter Agreement) equal to the Guaranteed Return. (emphasis in original)

6

26.     Race Holdings (the Subscriber) first attempted to collect the Guaranteed Return through the receipt of the escrowed common stock (2,250,000 shares) from both Shared Labs and the escrow agent; attorney Darrin Ocasio.  On 4/23/2019, an email to Mr. Ocasio stated:

> Pursuant to … the failure of a completed initial public offering by August 1, 2018, pursuant to [5 signed agreements], demand is made to you as Escrow Agent to immediately turnover to me on behalf of Race Holdings, LLC, the 2.25M Share Certificate.

27.     On 7/8/2019, Mr. Jensen wrote the Shared Labs Board referring to the "2,250,000 [escrowed shares] which are presently owned by Race Holdings" and further stating "I presently legally own, as they collateralize my guaranteed return, which is in default."  On 1/17/20, Race Holdings, through counsel, wrote to the CEO and Board of Shared Labs in part stating: "Race Holdings will accept its pre-existing rights to the 2,250,000 shares of SL placed in escrow to collateralize the Guaranteed Return…"  On 11/23/2020, Race Holdings wrote Shared Labs stating:

> Per paragraph 2 of the Guaranty, Race Holdings hereby demands to collect the Guaranteed Return from Shared Labs through Race Holdings receipt of a sufficient amount of the 2,250,000 shares (as defined in the Letter Agreement) equal to the Guranteed Return.

> On 11/1/2020, the Guaranteed Return was in the amount of $11,090,806.58. Accordingly, unless some number less than 100% of the escrowed shares has a present market value greater than this amount, please immediately take all action needed to convey to Race Holdings full, free, clear and unencumbered ownership of and title to the 2,250,000 escrowed shares.

28.     Race Holdings has not received a single share.  Hence, as Shared Lab's Guaranty says: "[t]his Guaranty is a guaranty of payment and is absolute."  Exhibit 1.

29.     Despite this, Shared Labs and Mr. Khandavalli posit that Race Holdings Guaranteed Return is worthless a) because no initial public offering ("IPO") occurred by 8/1/2018, therefore there is no "default" under the 2018 Letter Agreement; and b) because even if it did an IPO Race Holdings rights would be limited to the 2,250,000 escrowed shares.

30.     The Guaranty demonstrates that both of these positions are errant.  First, it states that: "[t]he Guarantor absolutely, unconditionally and irrevocably guarantees … the payment of (i) an aggregate of $3,000,000; and (ii) such amounts equal to the Guaranteed Return set forth in the [2018] Letter Agreement".  Exhibit 1.

31.     Could the use of "(i)" and "(ii)" with the conjunctive "and" between them be more clear?  No.  The first "(i)" is the requirement to pay back the principal investment in the amount of $3M.  The second "(ii)" says that the Guaranteed Return on the principal investment must be paid too.  Exhibit 1.

32.     Second, all the documents which formed the basis of Race Holdings Second $1.5M investment make clear that it was investing this money based on Shared Labs and Mr. Cory's powerfully incentivized and strongly held conviction that the company was going to complete an IPO in the next seven months, most definitely before the Guaranteed Return on $3,000,000 would rise from 35% in August, 2018, to 36% in September, 2018, to 37% in October, 2018, and so on, and so on, and so on.  With no cap.  Exhibit 5.

33.     Third, the position that Race Holdings remedy is limited to obtaining title to the 2,250,000 escrowed shares is demonstrated to be false by the Guaranty Mr. Cory executed as CEO of Shared Labs.  It says: "This Guaranty is a guaranty of payment and is

absolute."  Shares that could be worth less than $3M at a future date can not be "a guaranty of payment [which] is absolute."  Only the payment of U.S. dollars can be a guaranty of payment which is absolute.  Exhibit 1.

34.     Fourth, in the Guaranty Mr. Cory, as CEO of Shard Labs, "irrevocably waive[d] any defenses it had or hereafter may have in any way relating to any or all of the following:"

1.     "Any lack of validity or enforceability of the Obligations or any agreement or instrument relating thereto."

2.     "Any change in the time, manner or place of payment of, or in any other term of any of the Obligations … including, without limitation, any increase in the Obligations."

3.     "Any taking, exchange, release, subordination or non-perfection of any collateral…"

4.     "Promptness, diligence … and any other notice with respect to any of the Obligations and … and any requirement that [Race Holdings] exhaust any right or take any action against [Shared Labs] or any other person or entity or any collateral."

5.     "[Shared Labs] unconditionally and irrevocably waived its right to revoke [its] Guaranty and acknowledge[d] that [its] Guaranty is continuing in nature and applies to all presently existing and future Obligations."

6.     "Any other circumstance (including, without limitation, any statute of limitations) or manner of administering the Obligations or any existence of or reliance on any representation by [Race Holdings] that might vary the risk of [Shared Labs] or otherwise operate as a defense available to, or a legal or equitable discharge of, any other guarantor or surety."

Exhibit 1.

35.     In the summer of 2019, Shared Labs made a rights offering.  The three principal stakeholders in relation to the 2019 rights offering were, alphabetically, Messrs.

Clark, Jensen and Khandavalli.  Of the three, Mr. Khandavalli invested additional cash; $1,062,500, for which he received a $531,250 convertible note on the terms of the 2019 rights offering.[1]

36.    Mr. Khandavalli contracted with Shared Labs to secure 100% of his pre-existing rights covered by a non-convertible $2.85M note, and two convertible notes totaling $1,335,000, and relinquished all prior contracts and related rights.

37.    Mr. Clark contracted to secure 100% of his pre-existing rights covered by a convertible note in the amount of $1,016,637 and relinquished his prior contract and related rights.

38.    Race Holdings, the largest cash investor in Shared Labs was not offered 100% of his $3,000,000.00 in principal and/or his Guaranteed Return.  Not 50%.  Not 40%. Not 30%.  Not 20%.  Not 10%.

39.    On 6/17/2019 Mr. Kandavalli emailed Mr. Jensen making a proposal to negotiate Race Holdings Guaranteed Return (get Race Holdings to waive, forego or sell them) in exchange for certain consideration.  Exhibit 7.  At the same time he was negotiating "put rights" that he had personally with Shared Labs and a third shareholder, Jon Clark did too.  He wanted a rights offering to simultaneously resolve all three of these claims.

40.    On 7/8/2019, Mr. Jensen emailed Mr. Kandavalli and cc'd the board of directors of Shared Labs that the $500K he was offered to terminate his Guaranteed

_____

[1] The convertible note had a three year term and was and presumably remains convertible at $0.50 per share, with 6% interest compounded quarterly.

Rights were about 8.7% of their value.  Exhibit 8.  Mr. Jensen stated: "[a]s discussed, the premise that you and Jon keep 100% of the value of your notes (albeit deferred) and I receive 8.7% of the value of my guaranteed rights is laughable, but cagey and aggressive. My guaranteed rights as of 7 days ago, 7/1/2019, were worth $5,738,698.51 (500k/5.738M=8.7%)."

41.    Mr. Khandavalli and Shared Labs consummation of the plan which simultaneously benefitted Messrs. Khandavalli and Clark by giving them credit for 100% of the value of their contractual rights with the company while defying the Guaranty and the 2018 Letter Agreement with Race Holdings was a breach of Shared Labs contractual obligations to Race Holdings.

42.    On 10/25/2019, Mr. Khandavalli responded to Mr. Jensen's 7/8/19 email (over 3 months later) and stated (Exhibit 9), in part,

> Keith
> Thank you for patiently waiting. As indicated to you over the phone, here is what we have done.
>
> Jon Clark and my notes/put rights have been in default. Board approved to cure the defaults by making them convertible notes. The PUT notes carried no interest rate hence no interest was carried. My promissory note had an interest clause, interest was calculated and added to the convertible note. **All defaults that we are aware of have been re-set**. (emphasis added)

43.    By falsely taking the position that Shared Labs "**Absolute and Unconditional**" (emphasis in original) Guaranty was not in default Shared Labs and Mr. Khandavalli violated and breached their contractual obligations to Race Holdings.

44.    In or about early 2019, Mr. Jensen, met with and had extensive discussions with Mr. Khandavalli regarding whether or not Defendant Cory had stolen money from Defendant Shared Labs.  Mr. Jensen reviewed extensive documentation regarding these concerns and had many detailed fact-finding discussions with Mr. Khandavalli, another board member, Keith Sauls and the former General Counsel and CFO for Shared Labs, Mark Dinkel.

45.    On 3/25/2019, Mr. Jensen sent his proposed letter to the shareholders to all Shared Labs board members.  The letter said "DRAFT" in supersized black font on the top and bottom and in supersized red font the draft stated:

> The former GC and these board members approve of this letter and have
> stated that based on their independent investigation they do not disagree
> with my conclusions as set forth herein.?????  (all question marks, twice the
> font size and **red font** in original)

46.    A second and proposed final of that letter was sent to all Shared Labs board members on 3/26/2019; it contained a proposed Shareholder Voting Proxy on the last page which read:

> I … hereby provide [my] proxy … Mr. Jensen may cast [my] votes for [my]
> shares at any …  board meetings … relating to: a) Jason Cory; b) Jason
> Cory's severance from or replacement as CEO …; c) Kishore Khandavalli
> becoming the non-paid interim CEO…

47.    Five of the five board members provided Mr. Jensen written approval of Mr. Jensen's final proposed letter before it was sent to the Shared Labs shareholders (2 wrote "I agree with the form and substance of the letter", one wrote "agreed", one wrote "perfect" and the last wrote "I already sent my approval.  But here it's [sic] again.")

48.    In part, Mr. Jensen's so-approved letter stated:

12

I am the largest cash investor in SharedLabs, Inc.  I invested $3M in the company; $1.5M in June, 2017 and an additional $1.5M in January, 2018.

I, of course, want the company to succeed.

By way of introduction I have been practicing law for 28 years…

It is my opinion that litigation is not in SharedLabs, Inc. or any of its shareholders best interests at this time.  I intend to resort to litigation as an absolute last alternative, only if all reasonable efforts to resolve this matter fail.

I not only have lost confidence in Jason Cory, it my conclusion that the company can not survive and thrive with him as CEO.  I enclose a proxy seeking your vote … that Mr. Cory be replaced and an interim/transitional CEO take over [Mr. Khandavalli]…

49.     In 4 pages the letter summarized 17 exhibits which supported the conclusions that Mr. Cory a) caused corporations that he controlled that provided no legitimate services to Shared Labs, including Gambit Matrix, LLC, to be paid $305K of Shared Lab's money; and b) created a fictitious person at these entities who purported to sign documents, including an IRS W-9, when no one at Shared Labs could verify that these people existed.

50.      Four (4) months after Mr. Jensen sent the letter to the Shared Labs shareholders Jason M. Cory was indicted on 7/22/2020 in *U.S.A. v. Cory*, Case No. 3:20-cr-99-J-34JRK, in this District Court.

51.     The indictment has similar factual allegations against Mr. Cory to those set forth in Mr. Jensen's 3/26/2020 letter to the shareholders.  The indictment alleges Mr. Cory:

a.     caused 3 fraudulent wire transfers to be sent to a company he controlled, Gambit Matrix, LLC, totaling less than $17,000;

b.     that he bought a watch for less than $12,000 from an illegal money transaction; and

13

c.      the only quantifications in the indictment of specific sums of money stolen are those above and "[t]he property to be forfeited includes… a) the sum of at least $547,071.10, which represents the proceeds of the wire fraud offense; and b) the sum of $11,630.30, which represents the amount involved in the money laundering offense."

52.      Mr. Khandavalli became the interim CEO of Shared Labs as a result of the proxies Mr. Jensen obtained from his letter and Mr. Cory's resignation from that position. Shared Labs represented that they conducted an extensive audit of the books and records to quantify the level and extent of losses from any acts or omissions by Mr. Cory.

53.      In or around the time Mr. Khandavalli became the Shared Labs interim CEO he hired a new CFO, Mr. Michael Abrams.  On 4/4/2019, Mr. Jensen emailed Mr. Abrams in relation to his request that Mr. Jensen document his investments.  Mr. Jensen obtained evidence of Race's investment payments and ended an email on that date stating: "…please confirm … that you have accounted for my entire $3M investment in SharedLabs."

54.      On 4/25/2019, Mr. Abrams (the CFO) emailed Mr. Jensen and copied Mr. Khandavlli (the CEO) stating: "Keith, Sorry for the delay in follow-up. I can confirm that all $3MM was received in connection wit[h] your investments."  Exhibit 10.

55.      Mr. Khandavalli was put in a position of trust (the interim CEO of Shared Labs) by Mr. Jensen's actions taken to save Shared Labs.  Mr. Khandavalli then violated and breached Shared Labs contractual obligations to Race Holdings.

56.      Race Holdings provided Shared Labs numerous opportunities and over eight (8) months to consider settlement offers to avoid this litigation.  As stated above,

Race holdings, through counsel wrote the CEO and Board on 1/17/2020, making a

settlement offer and a demand.  The settlement offer in that letter expressly expired on

5/17/2020.

57.     Then COVID happened.  Mr. Jensen emailed the CEO and board on

8/25/2020, in part stating:

> Good afternoon,
>
> I hope this email finds you all well. My best wishes to all of you, your
> families, all of our employees, business associates and their families.
>                                           . . .
> Given all the world and this company has been through this year it was of
> course naturally incumbent upon me to reach out to determine if Mr.
> Khandavalli and/or the Board had any desire of communicating on this
> matter prior to the undesired pursuit of litigation …
>
> Accordingly, please accept this email as notice that if I don't receive an
> offer to my proposal set forth in [counsel's] letter of January 17, 2020, and
> I don't extend the deadline of October 1, 2020, hereby extended to now
> provide over eight (8) months for a response, litigation will unfortunately
> need to be pursued…

58.     On 11/23/20, Mr. Jensen wrote CEO Kishore Khandavalli, in part stating:

> I hope this letter finds you and your family well. As you know, despite the
> patently apparent need to pursue litigation despite my many attempts to
> avoid it, I continue to hope the best for RiseIT Solutions, Inc. and will
> continue to make myself available if I can aid in its success.
>
>                                           . . .
> Per paragraph 2 of the Guaranty, Race Holdings hereby demands to collect
> the Guaranteed Return from Shared Labs through Race Holdings receipt of
> a sufficient amount of the 2,250,000 escrowed shares (as defined in the
> Letter Agreement) equal to the Guranteed Return.
>
> On 11/1/2020, the Guaranteed Return was in the amount of
> $11,090,806.58.  Accordingly, unless some number less than 100% of the
> escrowed shares has a present market value greater than this amount, please
> immediately take all action needed to convey to Race

15

> Race Holdings, LLC has now complied, it posits on multiple occasions, with paragraph 2 of Shared Labs Guaranty which requires that Race Holdings must attempt to first collect the Guaranteed Return form Shared Labs through its receipt of a sufficient amount of the escrowed shares (as defined in the Letter Agreement) equal to the Guaranteed Return.

Exhibit 11.

59.   On 12/3/20, CEO Kishore Khandavalli sent an email to Mr. Jensen, in response to the email wherein Mr. Jensen sent the 11/23/20 demand, and stated, in part:

> Dear Keith,
> I hope you're doing well. Subject to the Board approval, I am open to transfer ownership of the 2,250,000 shares in escrow to Race Holdings, provided that you and Race Holdings first execute a release [foregoing] the "guaranteed return" on your investments in the company.

Exhibit 12.


## COUNT I:

### DECLARATORY JUDGMENT
### (against Shared Labs/RiseIT and Cory)

60.   Plaintiff incorporates by reference the paragraphs above as if fully set forth herein.

61.   Plaintiff requests the entry of a declaratory judgment pursuant to 28 U.S.C. §2201.  The following declaratory judgments are requested:

62.   Race Holdings, LLC ("Race Holdings") and Shared Labs, Inc. ("Shared Labs") entered into a Letter Agreement on 1/18/2018, wherein Shared Labs guaranteed a 35% annual return on Race Holdings initial investment in Shared Labs in the amount of $1.5 million, accruing from June 30, 2017 (the "First $1.5M"), and a 35% annual return

on Race Holdings second investment of $1.5 million, accruing from January 10, 2018 (the "Second $1.5M")(the "Guaranteed Return").

63.     The Guaranteed Return increased by one (1) percent for each month after August 1, 2018 if Shared Labs did not complete an initial public offering of its Common Stock by such date.

64.     Shared Labs did not complete an initial public offering by September 1, 2018.

65.     The January, 2018, Guaranty signed by Jason M. Cory as CEO of Shared Labs, and individually, is enforceable against Shared Labs, jointly and severally.

66.     The January, 2018, Guarantee "absolutely, unconditionally and irrevocably guarantees" Race Holdings "the payment of (i) an aggregate of $3,000,000; and (ii) such amounts equal to the Guaranteed Return set forth in the Letter Agreement (the "Obligation")."

67.     Shared Labs "irrevocably waive[d] any defenses it had or hereafter may have in any way relating to any or all of the following:"

        1.      "Any lack of validity or enforceability of the Obligations or any agreement or instrument relating thereto."

        2.      "Any change in the time, manner or place of payment of, or in any other term of any of the Obligations … including, without limitation, any increase in the Obligations."

        3.      "Any taking, exchange, release, subordination or non-perfection of any collateral…"

        4.      "Promptness, diligence … and any other notice with respect to any of the Obligations and … and any requirement that [Race Holdings] exhaust any right

17

or take any action against [Shared Labs] or any other person or entity or any collateral."

5.      "[Shared Labs] unconditionally and irrevocably waived its right to revoke [its] Guaranty and acknowledge[d] that [its] Guaranty is continuing in nature and applies to all presently existing and future Obligations."

6.      "Any other circumstance (including, without limitation, any statute of limitations) or manner of administering the Obligations or any existence of or reliance on any representation by [Race Holdings] that might vary the risk of [Shared Labs] or otherwise operate as a defense available to, or a legal or equitable discharge of, any other guarantor or surety."

68.      The Guaranteed Return on the First $1.5M at 35% per annum from 6/30/2017-9/1/2018 (233 days multiplied by a per diem of $1,438.35) totals $2,114,178.08.

69.      The Guaranteed Return on the Second $1.5M at 35% from 1/10/2018-9/1/2018 (233 days multiplied by a per diem of $1,438.35) totals $1,835,136.99.

70.      As of 9/1/2018 the Guaranteed return totaled the sum of what was then owing on the First 1.5M and the Second $1.5M which was $3,949,315.07.

71.      On 9/1/18, the interest rate on the Guaranteed Return increased to 36% for each day in September, 2018.  On 10/1/18, the interest rate on the Guaranteed Return increased to 37% for each day in October, 2018.  On 11/1/18, the interest rate on the Guaranteed Return increased to 38% for each day in November, 2018.  This 1% increase in the interest rate continues monthly with no cap until the Guaranteed Return is paid.

72.      The interest rate for the 31 days in October, 2020, was 61% and the Guaranteed Return as of 11/1/20, totaled $11,090,806.58.

73.      Race Holdings is entitled to a judgment against Shared Labs, Inc. n/k/a RiseIT Solutions, Inc. and Jason M. Cory, jointly and severally, as follows:

a.  that escrow agent Darrin Ocasio, Esq., or his successors or assignees, be ordered to turn over the 2,250,000 escrowed Shared Labs shares or share certificates to Race Holdings;

b.  that Shared Labs take all action needed to immediately convey to Race Holdings full, free, clear and unencumbered ownership of and title to the 2,250,000 escrowed shares;

c.  if Judgment was entered on 3/1/2021, for money in the amount of $13,592,714.85, and if entered on any of the following dates the following corresponding amounts:

| Date | Judgment |
|---|---|
| 4/1/2021 | $14,354,651.69 |
| 5/1/2021 | $15,145,140.73 |
| 6/1/2021 | $16,019,824.48 |
| 7/1/2021 | $16,928,346.03 |
| 8/1/2021 | $17,934,770.98 |
| 9/1/2021 | $19,016,262.24 |
| 10/1/2021 | $20,141,608.17 |
| 11/1/2021 | $21,390,387.88 |
| 12/1/2021 | $22,691,392.29 |
| 1/1/2022 | $24,136,802.90 |
| 2/1/2022 | $25,694,783.93 |
| 3/1/2022 | $27,212,536.10 |
| 4/1/2022 | $29,015,273.42 |
| 5/1/2022 | $30,899,278.84 |
| 6/1/2022 | $32,998,736.69 |
| 7/1/2022 | $35,195,638.89 |
| 8/1/2022 | $37,646,798.18 |
| 9/1/2022 | $40,300,639.60 |
| 10/1/2022 | $43,083,039.92 |
| 11/1/2022 | $46,193,281.29 |
| 12/1/2022 | $49,458,450.22 |

74.    For reasons stated, Race Holdings requests the entry of declaratory judgments, as requested in paragraphs 62 through and including paragraph 73 above, pursuant to 28 U.S.C. §2201.

## COUNT II:

### Breach of Contract
### (against Shared Labs/RiseIT and Cory)

75.    Plaintiff incorporates by reference the Factual Allegations above from paragraphs 1-59, inclusive (not Count I) as if fully set forth herein.

76.    The 2018 Letter Agreement was entered on 1/1/18.  It states, in part:

The Company agrees that Jensen … is guaranteed a 35% annual return on his initial investment in the Company in the amount of $1.5 million, accruing from June 30, 2017 (the "First $1.5M"), and a 35% annual return on his investment of $1.5 million pursuant to the Offering, accruing from January 10, 2018 (the "Second $1.5M") (the "Guaranteed Return").

77.    It further states:

The Guaranteed Return shall increase by one (1) percent for each month after August 1, 2018 if the Company does not complete an initial public offering of its Common Stock by such date.

78.    On or about 1/20/2018, Shared Labs, through Mr. Cory, entered an Amended and Restated Escrow Agreement (the "Amended Escrow Agreement") with Mr. Jensen wherein "[t]he parties … agree to establish an escrow account with the Escrow Agent wh[ich] shall hold a certificate … representing 2,250,000 shares of common stock… [of Shared Labs]".

79.    On 1/20/2018, Mr. Cory in both his individual capacity, and as CEO of Shared Labs, signed a Guaranty in favor of Race Holdings.  In part, that Guaranty states:

> The Guarantor absolutely, unconditionally and irrevocably guarantees, as primary obligor and not merely as surety, the payment of (i) an aggregate of $3,000,000; and (ii) such amounts equal to the Guaranteed Return set forth in the [2018] Letter Agreement (the **"Obligation"**). (emphasis in original)

80.    That "Obligation", as stated, is Shared Labs contractual agreement to two things:  (i) pay Race Holdings its $3,000,000.00 principal investment; and (ii) to pay Race Holdings "such amounts equal to the Guaranteed Return set forth in the [2018] Letter Agreement".

81.    The Guaranteed Return on the First $1.5M at 35% per annum from 6/30/2017-9/1/2018 (233 days multiplied by a per diem of $1,438.35) totals $2,114,178.08.

82.    The Guaranteed Return on the Second $1.5M at 35% from 1/10/2018-9/1/2018 (233 days multiplied by a per diem of $1,438.35) totals $1,835,136.99.

83.    As of 9/1/2018 the Guaranteed return totaled the sum of what was then owing on the First 1.5M and the Second $1.5M which was $3,949,315.07.

84.    On 9/1/18, the interest rate on the Guaranteed Return increased to 36% for each day in September, 2018.  On 10/1/18, the interest rate on the Guaranteed Return increased to 37% for each day in October, 2018.  On 11/1/18, the interest rate on the Guaranteed Return increased to 38% for each day in November, 2018.  This 1% increase in the interest rate continues monthly with no cap until the Guaranteed Return is paid.

85.    The interest rate for the 31 days in October, 2020, was 61% and the Guaranteed Return as of 11/1/20, totaled $11,090,806.58.

86.    Shared Labs breached the 2018 Letter Agreement, breached the Amended Escrow Agreement and breached the Guaranty.

87.     Race Holdings has incurred damages as a direct and proximate result of Shared Labs breaches of these contracts.

88.     Race Holdings damages directly resulting from Shared Labs breaches of these contracts as of 3/1/2021, are $13,592,714.85, exclusive of court costs, pre- and post-judgment interest.

89.     As a result of Shared Labs and Defendant Cory's breaches of these contracts, Race Holdings requests the entry of Judgment as follows:

a.  that escrow agent Darrin Ocasio, Esq., or his successors or assignees, be ordered to turn over the 2,250,000 escrowed Shared Labs shares or share certificates to Race Holdings;

b.  that Shared Labs take all actions needed to immediately convey to Race Holdings full, free, clear and unencumbered ownership of and title to the 2,250,000 escrowed shares;

c.  if Judgment was entered on 3/1/2021, for money in the amount of $13,592,714.85, and if entered on any of the following dates the following corresponding amounts:

| Date | Judgment |
|---|---|
| 4/1/2021 | $14,354,651.69 |
| 5/1/2021 | $15,145,140.73 |
| 6/1/2021 | $16,019,824.48 |
| 7/1/2021 | $16,928,346.03 |
| 8/1/2021 | $17,934,770.98 |
| 9/1/2021 | $19,016,262.24 |
| 10/1/2021 | $20,141,608.17 |
| 11/1/2021 | $21,390,387.88 |
| 12/1/2021 | $22,691,392.29 |

| | |
|---|---|
| 1/1/2022 | $24,136,802.90 |
| 2/1/2022 | $25,694,783.93 |
| 3/1/2022 | $27,212,536.10 |
| 4/1/2022 | $29,015,273.42 |
| 5/1/2022 | $30,899,278.84 |
| 6/1/2022 | $32,998,736.69 |
| 7/1/2022 | $35,195,638.89 |
| 8/1/2022 | $37,646,798.18 |
| 9/1/2022 | $40,300,639.60 |
| 10/1/2022 | $43,083,039.92 |
| 11/1/2022 | $46,193,281.29 |
| 12/1/2022 | $49,458,450.22 |

90.     Race Holdings sues for and seeks to recover reasonable attorneys' fees for the preparation of and prosecution of this action for the breaches of contract described herein to the fullest extent permitted by applicable law.

91.     Race Holdings requests the entry of a final judgment in its favor for such amounts for Shared Labs breaches of the agreements and contracts described herein.

92.     Race Holdings further requests the recovery of damages, both at law or in equity, as a direct and proximate result of Defendants' breaches of contract.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the entry of the declaratory judgments requested above, the entry of a final judgment from Defendants for the monetary damages set forth herein, an award of reasonable attorneys' fees for the preparation of and prosecution of this action, an award of pre- and post-judgment interest, costs, writs of garnishment and execution, post-judgment relief in collecting judgments rendered and all such other relief as may be available at law or in equity as justified by the circumstances.

23

**RESPECTFULLY SUBMITTED**,

/s/ Brett A. Hastings
Brett A. Hastings
Florida Bar No: 0170119
Law Offices of Brett Hastings, P.A.
1661 Beach Boulevard
Jacksonville Beach, FL 32250
Phone: 904-247-4400
Fax: 904-247-4404
E-mail: brett@justiceforjax.com
Secondary: bryan@justiceforjax.com
Secondary: joy@justiceforjax.com

/s/ Keith M. Jensen
Keith M. Jensen
Texas Bar #10646600
Pennsylvania Bar #201917
**JENSEN & ASSOCIATES**
1024 N. Main Street
Fort Worth, Texas 76164
Telephone: (817) 334-0762
Facsimile: (817) 334-0110
E-mail: kj@jensen-law.com
Secondary: bjt@jensen-law.com
Secondary: jm@jensen-law.com

**ATTORNEY FOR RACE
HOLDINGS, LLC PER LR 2.02(a)
and TRIAL COUNSEL PER LR
1.05(c)**

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on March 4, 2021, a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

<u>/s/ Keith M. Jensen</u>
Keith M. Jensen